UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANA JESSICA DEJESUS, on behalf of
herself and all others similarly situated,

        Plaintiff,

  -v-                                              No. 17 CV 7054-LTS-SN

METROPOLITAN TRANSPORTATION
AUTHORITY, and NEW YORK CITY
TRANSIT AUTHORITY,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Ana DeJesus brings this putative class action against Defendants Metropolitan Transit Authority ("MTA") and New York City Transit Authority ("NYCTA") seeking damages and injunctive relief for violations of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, New York State Executive Law § 296, and New York City Administrative Code § 8-107. Defendants now move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's First Amended Complaint (docket entry no. 13, the "FAC") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Docket entry no. 19.) The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction of Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367. Plaintiff further contends that the exercise of jurisdiction of her state and local law claims is authorized under the Class Action Fairness Act ("CAFA"), 28

U.S.C. § 1332(d). The Court has reviewed thoroughly all of the parties' submissions and arguments and, for the following reasons, Defendants' motion is granted.

BACKGROUND

The following relevant facts are drawn from the FAC, the well-pleaded factual content of which is taken as true for purposes of the pending motion practice.

Plaintiff is a legally deaf resident of New York City who frequently uses the New York City Subway (the "Subway"). (FAC ¶ 17.) Defendant MTA selects and purchases the railcars used by the Subway. (Id. ¶ 21.) Defendant NYCTA is a subordinate entity of the MTA that operates and maintains the Subway. (Id. ¶ 22-23.) In the spring of 2017, Plaintiff attempted to travel from her home in Manhattan to LaGuardia Community College ("LAGCC") in Queens. (Id. ¶ 18.) Plaintiff boarded a Queens bound local 7 train at Grand Central Terminal, with the intent to dismount the train at 33rd Street in Queens, the nearest stop to LAGCC. (Id.) Once Plaintiff was onboard the local train, and unbeknownst to Plaintiff, the conductor made an audio announcement that the train would be running express to 61st Street in Queens. (Id.) Unable to hear the announcement, Plaintiff remained on the train as it skipped her intended stop at 33rd Street, and ultimately exited the train at 61st Street, the next express stop. (Id. ¶ 19.) Plaintiff alleges that this was one of numerous occasions on which she expended time, energy, and money due to an unplanned service change. (Id.)

Plaintiff contends that "Subway railcars are inaccessible to deaf and hearing-impaired individuals," because they "make use of exclusively auditory announcements" during unplanned service changes. (Id. ¶ 48.) Plaintiff argues that Defendants, by failing to provide a "visual equivalent to audio announcements," have discriminated against her and other legally

deaf Subway users.  (Id. ¶ 8.)  Specifically, Plaintiff alleges that Defendants must accommodate deaf Subway riders by providing "onboard electronic screens" with "closed captioning of real-time route changes."  (Id. ¶¶ 6, 38, 49-50, 56, 61.)  Plaintiff also asserts that the exercise of jurisdiction under CAFA is appropriate because "a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000."  (Id. ¶ 13.)

## DISCUSSION

In adjudicating a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard applies to all civil actions.  Iqbal, 556 U.S. at 684.  When subject matter jurisdiction is at issue, the party asserting the propriety of jurisdiction has the burden of substantiating the basis for jurisdiction, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), and the Court is authorized to look outside the complaint where necessary to resolve the question.  See Flores v. S. Peru Copper Corp., 414 F.3d 233, 255 n.30 (2d Cir. 2003).

ADA and Rehabilitation Act Claims

To assert a claim under Title II of the ADA, a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) the defendant is subject to the Act; and (3) the

plaintiff was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of [her] disability." McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012). Here, the parties do not dispute that Plaintiff is a qualified individual within the meaning of the ADA or that Defendants are subject to the Act. Instead, the parties primarily disagree as to whether Plaintiff's Title II discrimination claim is foreclosed by federal Department of Transportation ("DOT") regulations implementing the statutory requirement that relevant transportation vehicles be readily accessible for the disabled, which include accessibility specifications as to required forms of public address systems and signage. See, e.g., 42 U.S.C. § 12142(a). Defendants contend that, because the DOT's vehicle accessibility regulations do not require the installation of visual display systems, Defendants cannot be required to install onboard electronic screens under Title II. In response, Plaintiff argues that, even if Subway railcars are compliant with DOT's accessibility regulations, Defendants may still be held liable under 42 U.S.C. § 12132, the general discrimination provision of Title II, for failing to make a reasonable modification to Subway railcars.

Title II of the ADA "covers discrimination in the provision of public services and is divided into Parts A and B." Abrahams v. MTA Long Island Bus, 644 F.3d 110, 115 (2d Cir. 2011). Part A "governs public services generally," and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id.; 42 U.S.C. § 12132.[1] Part B "specifically governs the

---

[1] DOT regulations provide that "[p]ublic entities that provide designated public transportation shall make reasonable modifications in policies, practices, or procedures

provision of public transportation services." Abrahams, 644 F.3d at 115; see also 42 U.S.C. §§ 12141-12150.  The Secretary of Transportation is empowered to promulgate regulations implementing Part B, including "standards applicable to facilities and vehicles."  42 U.S.C. § 12149.  Congress has mandated that those standards "be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board [(the "Access Board" or "Board")] in accordance with section 12204 of this title."[2]  42 U.S.C. § 12149(b).

DOT regulations define "accessible" with respect to facilities and vehicles to mean "complying with the accessibility requirements of parts 37 and 38 of this title."  49 C.F.R. § 37.3.  The regulations also provide that "a vehicle shall be considered to be readily accessible to and usable by individuals with disabilities if it meets the requirements of this part and the standards set forth in part 38 of this title."  49 C.F.R. § 37.7.  Part 38 delineates DOT's accessibility specifications for transportation vehicles, which mirror the Access Board's guidelines for transportation vehicles.  Compare 49 C.F.R. § 38 with 36 C.F.R. § 1192.  With respect to public information systems, DOT regulations and Access Board guidelines require rapid rail vehicles to be "equipped with a public address system permitting transportation system personnel, or recorded or digitized human speech messages, to announce stations and provide other passenger information."  49 C.F.R. § 38.61(a)(1); 36 C.F.R. § 1192.61.  Under Part 38, public transit entities are "encouraged to employ any available services, signage, or alternative

---

when the modifications are necessary to avoid discrimination on the basis of disability or to provide program accessibility to their services."  49 C.F.R. § 37.5.

[2] Section 12204 directs the Access Board to establish requirements "to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities."  42 U.S.C. § 12204.

systems or devices that are capable of providing the same or equivalent information to persons with hearing loss," see 49 C.F.R. § 38, App'x, but neither DOT's regulations nor the Access Board's guidelines require the installation of visual display systems.[3]

The text and regulatory structure of Title II support Defendants' argument that compliance with DOT regulations is sufficient to satisfy their Title II obligations with respect to rail vehicle accessibility, precluding a discrimination or reasonable accommodation claim based on lack of additional system-wide equipment. By directing the Board to develop accessibility guidelines for rail vehicles and requiring that DOT regulations be "consistent with" those guidelines, Congress indicated that compliance with those guidelines would be sufficient to

---

[3] Plaintiff argues that other regulations in part 37 require the installation of visual display systems, citing a variety of provisions relating to programs and activities in existing facilities (49 C.F.R. § 37.61), service requirements (49 C.F.R. § 37.167(b), 37.167(c), 37.167(f)), and facilities (49 C.F.R. § 37.9). Because none of these provisions speaks to a visual display requirement or even relates generally to vehicle accessibility, the Court does not find Plaintiff's argument persuasive. Indeed, guidance materials issued by the DOT and the Access Board in 1991, which have never been amended or superseded in any material respect, make clear that, while those authorities recognize the importance of information accessibility for persons with hearing loss, visual display systems have never been required by the DOT. See 56 Fed. Reg. 45584, 45777 (1991) ("[T]here currently is no requirement that vehicles be equipped with an information system which is capable of providing the same or equivalent information to persons with hearing loss."); 56 Fed. Reg. 45530, 45580 (1991) (same). The Access Board explained that the provision of information to persons with hearing loss was considered to be an "important matter," but that the Board "lack[ed] the information on which to base a requirement." 56 Fed. Reg. at 45542. Specifically, the Board noted that "[t]he absence of a clear idea of an appropriate system would place transit entities in the position of not knowing exactly what to specify from manufacturers when purchasing a new vehicle." Id. Thus, the Board stated that the matter had been "reserved pending further investigation." Id. Since then, the DOT's regulations and the Access Board's guidelines have remained unchanged, although the Access Board has continued to consider whether visual display systems should be required. See, e.g., 79 Fed. Reg. 21402, 21403-04 (2014) (declining to require installation of visual display systems despite recognizing that "technology has changed significantly since publication of the original rule and that technology which is capable of providing equivalent information now exists and is already in use in many cases").

ensure transit vehicles are accessible, and thus nondiscriminatory, under Title II. This interpretation is strengthened by Congress's inclusion of an interim accessibility provision for transit facilities completed after the passage of the ADA but before DOT regulations were issued. That provision states that compliance with existing federal accessibility standards would "suffice to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities." 42 U.S.C. § 12150. Likewise, DOT's regulations state that vehicles are "accessible" if they comply with the DOT's specifications in part 38, which in turn mirror the Access Board's guidelines and do not require the installation of visual display systems. See 49 C.F.R. §§ 37.3, 37.7. Accordingly, the Court concludes that compliance with existing federal accessibility standards is sufficient to satisfy a public transit entity's obligations under Title II with respect to vehicle signage equipment. See George v. Bay Area Rapid Transit, 577 F.3d 1005, 1012-1013 (9th Cir. 2009) (holding that compliance with DOT regulations and Access Board guidelines satisfied transit authority's obligations to make transit facilities accessible under Title II); Savage v. South Florida Reg'l Transp. Auth., 2012 WL 12895508, at *5-7 (S.D. Fla. Oct. 30, 2012) (same).[4]

In light of the foregoing analysis and the fact that Plaintiff's complaint seeks changes in the design and structure of Subway car signage, the Court finds unpersuasive Plaintiff's argument that she may still pursue her claim for the installation of onboard electronic screens under a general discrimination or reasonable modification theory. As other courts have

---

[4] Other courts have reached a similar conclusion in structural design cases arising under Title III of the ADA. See, e.g., United States v. Nat'l Amusements, Inc., 180 F. Supp. 2d 251, 257-260 (D. Mass 2001) (holding, in the context of a Title III claim, that "Congress intended that the Attorney General's regulations and the Access Board's guidelines, when passed, would similarly set forth the standards, which, if followed, would be sufficient to satisfy Title III obligations with respect to the design of a structure.").

observed, in enacting Title II Congress "intended that transit agencies could rely on DOT regulations in the design of their [vehicles]." George, 577 F.3d at 1013. To the extent that Plaintiff challenges those regulations as unreasonable, her argument lacks merit. The record reflects DOT's consistent attention to the issue of visual display systems, including developments in technology, and the agency's decision not to mandate this particular type of signage at this juncture is not facially inconsistent with the ADA, particularly where the statute expressly commits design accessibility decisions to the DOT's and Access Board's expertise. To the extent that Plaintiff argues that DOT's regulations are arbitrary and capricious, she may challenge them under the Administrative Procedure Act, but she cannot "use the courts to enact regulations [she] failed to convince the Board or the DOT to implement."[5] Id. (internal quotations omitted); see also id. ("[I]t defies logic that the transit agencies' protection could be taken away merely by citing a section of the ADA dealing with operations or one establishing a general non-discrimination rule. That would make Congress' enactment of section 12150 without any effect, because it would offer no protection at all to transit agencies which followed the rules. . . . Likewise, the DOT regulatory safe harbor would be completely lacking if any facilities-based claim could be recast as a claim about operations, general discrimination, or another non-design related problem.").

        To permit Plaintiff to assert her claim under a reasonable modification theory would "allow any person to file an action contending that, in the opinion of this particular plaintiff, a design feature ought to have been included," even though Congress has recognized

---

[5] Although Plaintiff argues in passing that "it would be manifestly arbitrary and capricious for the DOT to indefinitely apply a 27-year old regulation," the FAC does not invoke the Administrative Procedure Act and the Court therefore declines to address Plaintiff's argument that those regulations are arbitrary and capricious to the extent that they do not require the installation of onboard electronic screens.

that "courts are ill-equipped to evaluate such claims and to make what amount to engineering, architectural, and policy determinations as to whether a particular design feature is feasible and desirable." Indep. Living Res. v. Or. Arena Corp., 982 F. Supp. 698, 746 (D. Or. 1997). Moreover, such an interpretation would create uncertainty for public transportation authorities and individuals tasked with designing new Subway railcars, as any particular design feature might later be subjected to court-mandated revisions despite a transit authority's adherence to DOT-approved specifications. Because Congress intended that compliance with DOT regulations would be sufficient to satisfy a public transit entity's obligations under Title II with respect to accessible vehicle design, and because DOT's regulations do not require the installation of onboard electronic screens, Plaintiff's ADA claim must be dismissed.[6]

CAFA and Supplemental Jurisdiction of State and City Law Claims

Plaintiff asserts that, notwithstanding the dismissal of her federal ADA and Rehabilitation Act claims, the Court may retain jurisdiction of her state and city law claims under CAFA. CAFA grants the federal courts original jurisdiction of any class action involving "(1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006); 28 U.S.C. § 1332(d)(2), (5)(b), (6). However, a district court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (LexisNexis 2017).

---

[6] Because the ADA and the Rehabilitation Act "impose nearly identical requirements," Plaintiff's Rehabilitation Act claim is also dismissed. See Abrahams, 644 F.3d at 115 n.3.

Defendants argue that the allegations in the FAC are insufficient to establish the predicates for exercise of CAFA jurisdiction because, in a case filed "by a New York citizen on behalf of New York City subway passengers against two New York defendants," it is "obvious" that two-thirds or more of the members of the proposed class of legally deaf Subway riders are citizens of New York.  In response, Plaintiff argues that 61 million tourists visit New York City annually, and thus some proportion of those out-of-state visitors must also be counted as class members.  Even accepting Plaintiff's representation as true, the Court agrees with Defendants that it would be unreasonable to infer from the tourism figures that tourists make up more than one-third of the proposed class.[7]  Accordingly, the Court finds that it must decline to exercise CAFA jurisdiction of Plaintiff's state and city law claims.  In light of the Court's dismissal of Plaintiff's federal ADA and Rehabilitation Act claims, the Court also declines to exercise supplemental jurisdiction of Plaintiff's state and city law claims.  See 28 U.S.C. § 1367(c)(3).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is granted, and Plaintiff's claims under the Americans With Disabilities Act and the Rehabilitation Act are dismissed.  To the extent that Plaintiff asserts state and city law claims, the Court finds no basis for the exercise of CAFA jurisdiction and declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of those claims, which therefore are also

---

[7] As Defendants point out, there are over 8.6 million residents in New York City alone, and even assuming that 61 million out-of-state tourists spend an average of seven days in New York City each year, the ratio of residents to tourists in New York City on any given day is greater than 7 to 1.

dismissed.  This Memorandum Opinion and Order resolves docket entry no. 19.  The Clerk of

Court is directed to enter judgment accordingly and to close this case.

    SO ORDERED.

Dated: New York, New York
      March 6, 2019

                                         /s/ Laura Taylor Swain
                                         LAURA TAYLOR SWAIN
                                         United States District Judge